18-1000-cv
*Pettibone v. WB Music Corp.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of April, two thousand nineteen.

PRESENT:   BARRINGTON D. PARKER,
                    PETER W. HALL
                    CHRISTOPHER F. DRONEY,
                              *Circuit Judges.*

---

ROBERT E. PETTIBONE, DBA LEXOR MUSIC,

    *Plaintiff-Appellant*,

     v.               18-1000-cv

WB MUSIC CORP., A DELAWARE CORPORATION, &
WARNER/CHAPPELL MUSIC, INC., A DELAWARE
CORPORATION,

    *Defendants-Appellees*.

---

**FOR PLAINTIFF-APPELLANT:**   RICHARD STEVEN BUSCH, King & Ballow, Nashville, TN.

**FOR DEFENDANTS-APPELLEES:**   ALEXANDER KAPLAN (Sandra A. Crawshaw-Sparks & David A. Munkittrick, *on the brief*), Proskauer Rose LLP, New York, NY.

1

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **VACATED** and the case is **REMANDED** for proceedings set out below.

Plaintiff-Appellant Robert Pettibone appeals from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*) dismissing, under Federal Rule of Civil Procedure 12(b)(6), his claim against Defendants-Appellees ("Warner") for unpaid royalties. The District Court dismissed on the ground that an agreement between Pettibone and Warner (the "Agreement") allowed Warner to offset royalties due to Pettibone against its own attorneys' fees incurred in successfully defending against a copyright infringement suit in which both parties were named as defendants. We assume familiarity with the facts, procedural history, and issues on appeal.

In 1990, Pettibone and Warner entered into the Agreement authorizing Warner to administer Pettibone's copyright interests in the song "Vogue," which Pettibone composed with pop icon Madonna. Under the Agreement, Warner collected the earnings generated by "Vogue" and split them equally with Pettibone. Agreement § 6; Oral Arg. R. at 1:35–45. In 2012, a music company, VMG Salsoul, LLC ("VMG"), sued Pettibone and Warner for copyright infringement, contending that Pettibone had copied a portion of the song "Love Break" and used it without authorization in "Vogue." *Pettibone v. WB Music Corp.*, No. 17-CV-2569-RJS, 2018 WL 1441395, at *2 (S.D.N.Y. Mar. 21, 2018). Represented by separate counsel and bearing their own costs, Warner and Pettibone prevailed in the trial court and on appeal. *Id.*

Following the VMG suit, Warner withheld in excess of $500,000 in royalties due Pettibone to offset the attorneys' fees it had incurred in defending the suit. *Id.* When Pettibone demanded payment of the royalties, Warner refused to comply, contending that under Section 8.1 of the

2

Agreement—the indemnification provision—Warner was entitled to withhold the royalties. *Id.* Section 8.1 provides in relevant part:

> Each party will indemnify the other against any loss or damage (including court costs and reasonable attorneys' fees) due to a breach of this agreement by that party which results in a judgment against the other party or which is settled with the other party's prior written consent (not to be unreasonably withheld). In addition, [Pettibone's] indemnity shall extend to the "deductible" under [Warner's] errors-and-omissions policy without regard to judgment or settlement. Each party is entitled to be notified of any action against the other brought with respect to [the song "Vogue"], and to participate in the defense thereof by counsel of its choice, at its sole cost and expense.

Agreement § 8.1.[1] Pettibone sued in the District Court, arguing that he had never breached the Agreement, which he attached as an exhibit to his Complaint, and therefore was under no duty to indemnify Warner. Warner moved to dismiss under Rule 12(b)(6), contending that section 8.1 clearly permitted it to withhold royalties even in the absence of a breach of the Agreement. Pettibone cross-moved for summary judgment. The District Court dismissed Pettibone's claim for royalties, reasoning that "the Agreement unambiguously requires Pettibone to indemnify Warner for the attorneys' fees and costs it incurred in defending against the VMG lawsuit, up to the $1.5 million retention in [Warner's Insurance] Policy." *Pettibone*, 2018 WL 1441395, at *5. We disagree and therefore vacate and remand.

Under New York law, which governs the Agreement, an indemnification provision cannot be enforced unless the intention to impose such an obligation is "unambiguous." *Bradley v. Earl B. Feiden, Inc.*, 864 N.E.2d 600, 605 (N.Y. 2007). This principle applies with particular force in an agreement which purports to shift attorneys' fees. *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent or where its terms are subject to more than one

---

[1] The errors-and-omissions policy referenced in section 8.1 (the "Insurance Policy") provided coverage to Warner for damages arising from copyright infringement in excess of a retention amount of 1.5 million dollars. Insurance Policy at 1, § I(A)(1)–(2).

reasonable interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015). Further, under New York law, it is well settled "that ambiguities in a contractual instrument will be resolved *contra proferentem*, against the party who prepared or presented it." *151 W. Assocs. v. Printsiples Fabric Corp.*, 460 N.E.2d 1344, 1345 (N.Y. 1984).

We conclude that Section 8.1 is pock-marked with ambiguity and, in fact, more readily evinces an understanding between the parties that, in the absence of a breach, each party will shoulder its own attorneys' fees and costs. First, section 8.1 contains language that explicitly cabins the indemnification obligation to attorneys' fees and costs arising from a breach of the Agreement. Agreement § 8.1. In contrast, there is no explicit mention of whether an indemnification obligation exists absent such a breach. Second, section 8.1 states that "each party is entitled to be notified of any action against the other brought with respect to [the song "Vogue"], and to participate in the defense thereof by counsel of its choice, at its *sole cost and expense*." *Id.* (emphasis added). Third, section 8.1, read as a whole, can be reasonably interpreted to limit Pettibone's indemnification obligation, *in the event of Pettibone's breach*, to the retention amount set forth in Warner's Insurance Policy, regardless of the amount of any judgment or settlement against Warner resulting from that breach. This reading gives effect to every word of section 8.1. It also makes economic sense, as Warner's Insurance Policy likely covers it for breach-related damages in excess of the retention amount. Insurance Policy § I(A)(1)–(2).

Warner's argument to the contrary relies heavily on the second sentence of section 8.1, which provides that Pettibone's "indemnity shall extend to the 'deductible' under [Warner's] errors-and-omissions policy without regard to judgment or settlement." Warner argues that the only reasonable reading of "without regard to judgment or settlement" is "without regard to *breach*." As previously discussed, to the extent Warner urges that it intended to bury, in section 8.1, a highly unorthodox fee-shifting provision that is astonishing in its breadth, the contractual language

4

undoubtedly "fails to disclose its purpose." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d at 80. Given that Warner drafted the Agreement, Oral Arg. R. at 17:02–06, it could have easily included, in reasonably intelligible language, an indemnification obligation for all *allegations*. It also could have expressly clarified that section 8.1's indemnification obligation extends beyond instances of breach. Warner did neither, and that choice cuts sharply against it. *Printsiples Fabric*, 460 N.E.2d at 1345.

As counsel for Warner conceded at oral argument, the attorneys' fees related to this dispute are now approaching one million dollars. Oral Arg. R. at 20:00–13. Warner would have us read the Agreement to shift attorneys' fees of this magnitude to individual songwriters for any and all infringement claims brought against them, regardless of merit or frivolousness. Because the Agreement's language does not come close to unambiguously requiring such an extraordinary result, we hold that Warner cannot enforce section 8.1 against Pettibone.

For the foregoing reasons, we **VACATE** the judgment of the District Court and **REMAND** for the District Court to enter judgment for Pettibone, to calculate the royalties that Warner, having improperly withheld them in breach of the Agreement, now owes to Pettibone, and to consider and determine Pettibone's prayer for pre- and post-judgment interest as well as attorneys' fees, costs, and expenses incurred in connection with the instant action and this appeal.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

5